KEKER & VAN NEST, LLP
ROBERT A. VAN NEST - #84065
BRIAN L. FERRALL - #160847
LEO L. LAM - #181861
RAVIND S. GREWAL - #220543
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

BROMBERG & SUNSTEIN LLP
LEE CARL BROMBERG (Admitted *Pro Hac Vice*)
TIMOTHY M. MURPHY (Admitted *Pro Hac Vice*)
KERRY L. TIMBERS (Admitted *Pro Hac Vice*)
125 Summer Street
Boston, MA 02110-1618
Telephone: (617) 443-9292
Facsimile: (617) 443-0004

Attorneys for Defendant
BLUEARC CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>BLUEARC CORPORATION,<br><br>                Defendant. | Case No. C 03-05665 MHP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF BLUEARC'S MOTION TO BIFURCATE DAMAGES PHASE**<br><br>Date:    February 7, 2005<br>Time:   2:00 pm<br>Dept:   Courtroom 15, 18th Floor<br>Judge:  The Honorable Marilyn Hall Patel |

## I. INTRODUCTION

Defendant BlueArc Corporation ("BlueArc") hereby asks this Court to bifurcate trial and discovery of this case into two phases—an initial phase for liability issues and, if necessary, a second phase for damages issues. As in the typical patent case, the issue of liability in this case is highly technical and complicated. But the damages issues are just as complicated, primarily because of plaintiff Network Appliance, Inc.'s ("NetApp") insistence on seeking a lost-profits measure of recovery. NetApp's lost-profits strategy implicates nearly every aspect of BlueArc's and NetApp's businesses—their product lines, production capacity, and profit margins—along with the general structure of the file-server market. These complex issues will require significant document and deposition discovery, the vast majority of which remains to be done.

Particularly in these circumstances, bifurcation would promote all of the goals of fairness, expediency, and convenience set forth in Federal Rule of Civil Procedure 42(b) by:

- Conserving the resources of the Court and the parties by avoiding time-consuming and costly discovery regarding and trial of damages issues, which are distinct and separable from liability issues and may be unnecessary if no liability is found.

- Promoting jury comprehension by relieving the jury of its obligation simultaneously to resolve complex technical (liability) and financial (damages) issues.

- Minimizing prejudice by allowing the parties to avoid wasted effort and expenses and try the case before a fully engaged trier of fact.

For all these reasons, and as discussed in greater detail below, this Court should bifurcate and stay discovery and trial on damages issues. BlueArc proposes a liability trial, followed (if NetApp proves liability) by a two-month period for damages discovery and then a damages trial.

## II. ARGUMENT

Federal Rule of Civil Procedure 42(b) provides in relevant part:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial ... of any separable issue ... or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed. R. Civ. Proc. 42(b). The Rule "confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings." Hangarter v. Provident
1
MPA IN SUPPORT OF BLUEARC'S MOTION TO BIFURCATE DAMAGES
CASE NO. C 03-05665 MHP

345313.01

Life & Accident Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004); see also Gardco Mfg. Co. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed. Cir. 1987) (district court may bifurcate "as part of its wide discretion in trial management"). Implicit in Rule 42(b) is the trial court's discretion to stay discovery proceedings on bifurcated issues until the end of the first trial. See Ellingson Timber Co. v. Great Northern Ry. Co., 424 F.2d 497, 499 (9th Cir. 1970) ("One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues").

When exercising their broad discretion under Rule 42(b), "courts should decide whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." Ciena Corp. v. Corvis Corp., 210 F.R.D. 519, 520 (D. Del. 2002) (citing Union Carbide Corp. v. Montell N.V., 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1988)). Ultimately, "the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." Id. at 520-21 (quoting In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir. 1986) and citing 9 Wright & Miller, Federal Practice & Procedure, § 2388 (2d ed. 2002)).

Bifurcation of discovery and trial of this case into separate liability and damages phases will further each of these interests. First, bifurcation will promote judicial economy and allow this Court and the parties to conserve their scarce resources. Most obviously, trying liability separately and first may mean that no damages trial will be necessary. See Naxon Telesign Corp. v. GTE Information Sys., Inc., 89 F.R.D. 333, 341 (N.D. Ill. 1980). This may be true no matter who prevails in the liability phase. Obviously, if NetApp fails to prove liability there will be no need for a damages trial. Conversely, "a jury determination [of liability against the defendant] has great potential to induce settlement with respect to damages." Industrias Metalicas Marva, Inc. v. Lausell, 172 F.R.D. 1, 5 (D.P.R. 1997). Further, "[s]eparate trials are particularly appropriate in patent cases since a finding of liability for patent infringement is an appealable interlocutory order under 28 U.S.C. § 1292(c)(2)." Foseco, Inc. v. Consolidated Aluminum Corp., 851 F. Supp. 369, 370 (E.D. Mo. 1991); see also Eaton Corp. v. Auburn Gear, Inc., 8 U.S.P.Q.2d 1373, 1374 (N.D. Ind. 1988).

345313.01

If no damages trial is necessary, whether because of settlement or a finding of no liability at trial or on appeal, the parties also will be able to avoid costly and complicated damages discovery. And, in this case, damages issues are not the tail of the dog. NetApp's notice of deposition to BlueArc under Federal Rule of Civil Procedure 30(b)(6) contained 48 topics, 28 of which are addressed to damages. (Purcell Decl. Ex. A.) NetApp's insistence on claiming lost-profits damages implicates virtually every aspect of both parties' businesses. To meaningfully calculate lost profits for trial, the parties will require extensive document discovery and depositions of fact and expert witnesses on both parties' products, production capacity, revenues, costs, and margins, as well as the file-server market in general. As of today, NetApp has produced only a small amount of the damages discovery BlueArc will eventually need to try damages issues, and BlueArc may need to file a motion to compel further discovery. NetApp has already filed its own baseless motion to compel. No damages depositions have been taken. Completing this discovery will cost a significant amount of time and money. Bifurcation would save these resources if it turns out no damages trial is necessary.

Further, bifurcation would serve judicial economy because there is little or no evidentiary overlap between liability and damages issues in this case. Liability will turn on the patents themselves, their prosecution history, the prior art, and a technical analysis of how BlueArc's products operate. To recover lost profits, by contrast, NetApp must "show a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales." Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1353 (Fed. Cir. 2001). That will require an analysis of the market in which the parties' products compete and a financial analysis of the both parties' businesses. See King Instruments Corp. v. Perego, 65 F.3d 941, 950-52 (Fed. Cir. 1995); Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983). The liability analysis will require extensive technical expertise in a specific field; the damages inquiry requires general financial and business expertise. Bifurcation will not force the parties to present the same evidence twice.

Second, bifurcation would simplify this complex patent case and reduce the likelihood of juror confusion. As the Federal Circuit has recognized, "the nature of [patent litigation] is often

inordinately complex and time consuming." Hempstreet v. Speigel, Inc., 851 F.2d 348, 350 (Fed. Cir. 1988). The complexity of patent cases presents numerous problems, including consumption of scarce judicial resources and potential jury confusion. Accordingly, trial courts routinely bifurcate complex patent cases in order to "simplify the issues [and] maintain manageability of the volume and complexity of the evidence presented to a jury." Ciena Corp., 210 F.R.D. at 521; see also Avia Group Int'l, Inc. v. Nike, Inc., 22 U.S.P.Q.2d 1475, 1478 (D. Or. 1991) (ordering bifurcation in order to simplify complex patent action); Giro Sport Design, Inc. v. Pro-Tec, Inc., 10 U.S.P.Q.2d 1863, 1865 (N.D. Cal. 1989) (same).

This case presents complex issues as to both liability and damages. However accessible NetApp tries to make its liability case, the underlying technology and NetApp's infringement arguments are likely to confuse a jury unsophisticated in the fields of computer science in general and network file servers in particular. Trying the liability issues will require the jury to synthesize extensive testimony from percipient and expert witnesses, in addition to volumes of exhibits, including diagrams, drawings, written documents, and models. By itself, this will be a complicated and difficult assignment posing an obvious risk of juror confusion.

Trying the damages issues will be equally difficult and potentially confusing. As noted above, litigating lost profits will require exhaustive testimony from fact and financial experts, who will testify in detail about both parties' businesses and the file-server market in general, and presentation of voluminous damages exhibits, including financial data. Analyzing this material and coming to the right conclusion is another complicated task requiring a diligent jury. Bifurcation would increase the likelihood of full jury comprehension of the nuances of the case.

Third, bifurcation would be less prejudicial to the parties than the alternative of a unified discovery and trial schedule. There may be no need to try damages issues. If the parties are forced to complete ultimately unnecessary discovery and prepare for an ultimately unnecessary trial on damages, they will spend significant time and money they otherwise could have saved. Similarly, if liability and damages are tried at the same time before a jury that is overburdened by the scope of its task, the parties could suffer obvious prejudice from erroneous factual findings, including, potentially, the need to retry the entire case. Bifurcation would remove these dangers.

NetApp may argue that the slight delay from bifurcation would cause it prejudice, but, in reality, bifurcation is the only way the technical liability issues can be fairly tried in July, as the Court has ordered. Trying everything now is not practical given the amount of discovery still to be done. Even without the complexities of damages discovery, and notwithstanding NetApp's promise to narrow the number of claims at issue, this case still involves 38 asserted claims, each applied to several different BlueArc products.[1] Because of the breadth of the case, BlueArc likely will rely upon dozens of prior-art references to show invalidity. BlueArc also has a claim for inequitable conduct. Adding NetApp's lost-profits claim and other damages issues to this list would impair trial preparation and, as a result, unfairly burden the Court and the jury.

Neither may NetApp complain that BlueArc delayed seeking bifurcation to disadvantage it in discovery. Bifurcation would not disadvantage anyone. Neither party has completed damages discovery. BlueArc is trying to assure both parties have ample time to do so, while avoiding unnecessary work. In any event, BlueArc first proposed bifurcation over a month ago. (Purcell Decl. Ex. B.) NetApp did not definitively respond to BlueArc's proposal until last week, which is why BlueArc is only now bringing the issue before the Court on shortened time.

Finally, NetApp may not argue bifurcation would violate its Seventh Amendment rights. There will be little or no factual overlap between liability and damages issues here, and, in any event, "the [Seventh Amendment] prohibition is not against having two juries review the same **evidence**, but rather against having two juries **decide** the same **essential issues**." In re Innotron, 800 F.2d at 1086 (emphasis in original). There is no Seventh Amendment issue here.

For all the above reasons, BlueArc respectfully requests that this Court exercise its broad discretion under Rule 42(b) and grant this motion.

Dated: January 24, 2005

KEKER & VAN NEST, LLP

By: _____
DANIEL PURCELL
Attorneys for Defendant
BLUEARC CORPORATION

---

[1] The complexity of the liability issues are further illustrated by NetApp's recent propounding of 167 requests for admission, nearly all relating to infringement issues. (Purcell Decl. Ex. C.)