KEKER & VAN NEST, LLP
ROBERT A. VAN NEST - #84065
BRIAN L. FERRALL - #160847
LEO L. LAM - #181861
SHANA N. STANTON - #217689
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

BROMBERG & SUNSTEIN LLP
LEE CARL BROMBERG (Admitted *Pro Hac Vice*)
125 Summer Street
Boston, MA 02110-1618
Telephone: (617) 443-9292
Facsimile: (617) 443-0004

Attorneys for Defendant and Counterclaimant
BLUEARC CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NETWORK APPLIANCE, INC.,<br><br>                Plaintiff,<br><br>  v.<br><br>BLUEARC CORPORATION,<br><br>                Defendant. | Case No. C 03-05665 MHP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BLUEARC CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES ISSUES**<br><br>Date: June 3, 2005<br>Time: 2:30 p.m.<br>Dept: Courtroom 15, 18th Floor<br>Judge: The Honorable Marilyn Hall Patel<br><br>Trial Date: July 26, 2005 |

## I. INTRODUCTION

This motion addresses two far-fetched damages theories recently announced by plaintiff Network Appliance, Inc. ("NetApp"), through its damages expert. Specifically, NetApp is seeking two categories of damages that it cannot recover as a matter of law. First, NetApp is attempting to recover **its own** lost profits for alleged infringement occurring before it acquired the patents-in-suit from Auspex Corporation. Obviously, before NetApp owned the patents, it had no right to recover any damages for infringement, and when it bought the patents it obtained the right to pursue only those damages Auspex had suffered before the date of purchase. It may seek Auspex's lost profits before the purchase date, but not its own. Second, NetApp's expert has asserted that, if this Court rules NetApp cannot make out a lost-profits case, NetApp is entitled to a much higher royalty rate on BlueArc's sales. This is a transparent attempt to smuggle lost-profits damages into the royalty calculation, and it is legally baseless. Lost profits and royalties are mutually-exclusive damages categories, and the appropriate royalty rate in a patent case in no way depends on whether or not the plaintiff can establish lost profits. Because NetApp has no legal basis for seeking either of these categories of damages, this Court should grant partial summary judgment to BlueArc on these issues.

## II. RELEVANT FACTUAL BACKGROUND

There are just three undisputed facts relevant to this motion:

- On June 15, 2001, BlueArc began selling the accused products. Declaration of Shana N. Stanton In Support of BlueArc's Motion for Partial Summary Judgment ("Stanton Decl.") Ex. 1.

- On June 13, 2003, NetApp purchased the patents-in-suit from Auspex. *Id.* Ex. 2.

- The Asset Purchase Agreement by which NetApp acquired the Auspex patents provides that: "Seller hereby agrees to assign and transfer to Purchaser and its representatives, successors and assigns the full and exclusive right to sue upon and otherwise enforce the Seller patents and **to recover all past damages** and other potential relief arising from infringement of the Seller patents assigned by this Agreement." *Id.* Ex. 3 at § 2.2 (emphasis added).

On March 4, 2005, NetApp served the report of its damages expert, Michael Wagner. *Id.* Ex. 4. The report contains Wagner's opinions about NetApp's supposed damages resulting from BlueArc's alleged infringement of the patents-in-suit. Wagner calculates NetApp's purported

lost profits beginning on three alternative dates, including June 15, 2001, the first date on which BlueArc sold an allegedly infiringing product. *Id.* at 3. Ultimately, Wagner concludes that NetApp can and should recover lost profits starting on June 15, 2001. *Id.* at 11-15. Wagner also calculates the reasonable royalty to which NetApp contends it is entitled, but concludes that the royalty depends on whether or not the trier of fact determines NetApp is entitled to lost profits. If NetApp can recover lost profits for a particular sale, Wagner applies a 7% royalty rate. *Id.* at 48-49. But if NetApp does not prove lost profits, Wagner applies a **23%** rate. *Id.* at 49-50. Presumably, NetApp intends to rely on these opinions in presenting a damages case at trial. Both opinions, however, are directly contrary to law and logic.

### III. ARGUMENT

**A. These issues are appropriate for resolution by summary judgment.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if BlueArc demonstrates there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the facts controlling the application of a rule of law are undisputed, the trial court is presented with a purely legal question that it may resolve at summary judgment. *Delbon Radiology v. Turlock Diagnostic Ctr.*, 839 F. Supp. 1388, 1391 (E.D. Cal. 1993) (pure question of law regarding authority to enforce partnership claim did not involve any disputed material fact and thus appropriate for resolution at summary judgment). Because the measure of damages in a patent case is a purely legal question, *Cold Metal Process Co. v E. W. Bliss Co.*, 285 F. 2d 231, (6th Cir. 1960), the issues presented in this motion are appropriate for resolution by summary judgment.

**B. NetApp cannot recover its own lost profits for a time period when it did not even own the patents-in-suit.**

It is undisputed that NetApp did not own the patents-in-suit until June 13, 2003, the day it purchased those patents from its bankrupt predecessor, Auspex Corporation. Stanton Decl. Ex. 2. It is likewise undisputed that the contract by which NetApp acquired the patents gave NetApp the right only "**to recover all past damages** and other potential relief arising from infringement

of the Seller patents assigned by this Agreement." *Id.* Ex. 3 at § 2.2 (emphasis added). Finally, through its expert, NetApp has announced that it plans to seek at trial its own lost profits for the period between June 15, 2001—the date of BlueArc's first sale of the allegedly infringing products—and the purchase date. It has no basis for seeking these damages.

It has always been a fundamental principle of both contract and remedies law that, when a party acquires a legal right or claim, it purchases only those rights enjoyed by the seller and nothing more. *See Medtronic AVE Inc., v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3rd Cir. 2001). As Professor Farnsworth remarked long ago, "[e]very law student knows that 'the assignee stands in the shoes of the assignor.' " E. Allan Farnsworth, *Farnsworth on Contracts*, § 11.8 (3d ed. 1999). The rule is no different in patent-infringement suits. *See National City Bank of Evansville v. U.S*., 163 F. Supp 846, 851 (Ct. Cl. 1958) (holding that "[i]t is well established that an assignee stands in the shoes of the assignor, and that by assignment the assignee could acquire no greater rights that its assignor.") Indeed, in this case, the assignment contract itself explicitly states that NetApp is purchasing the right to seek Auspex's past damages arising from any infringement. Stanton Decl. Ex. 3 at § 2.2.

NetApp ignores this bedrock principle—not to mention simple logic and basic notions of fairness—by seeking its own lost profits for a time period when it did not own the patents-in-suit. Before NetApp bought the patents, it had no right to seek any damages for infringement of those patents. It obtained standing to bring this suit and seek damages only upon executing the Asset Purchase Agreement with Auspex. Accordingly, that contract is the sole source of NetApp's right to recover damages for the time period before it owned the patents. As to that time period, Auspex could have assigned only those rights it actually possessed, and nothing more. If Auspex had sued BlueArc prior to selling the patents, it could have sought its own lost profits, but not those of NetApp or any other competitor in the industry. It must follow that, when NetApp acquired the patents, it bought the right to sue for Auspex's lost profits during the period before the sale. Any other result would contradict the long-settled authority above—and, just as important, it would make no analytical sense. This Court should uphold law and logic and rule that NetApp cannot recover its lost profits, assuming it could prove any, for the period

1 | prior to June 13, 2003.

**C. NetApp cannot recover a higher royalty rate if it fails to prove lost profits.**

NetApp's calculation of a reasonable royalty rate is equally problematic. According to its expert, that royalty rate depends on whether NetApp recovers lost profits. In the event NetApp can make out a lost-profits case, NetApp's expert calculates royalties based upon a royalty rate of 7%. In the event NetApp cannot establish lost profits, however, it argues it should be entitled to a rate of 23%—over three times greater. There is no authority in law or economics for such an approach. It is a blatant attempt to import lost-profits damages into the royalty calculation.

NetApp's gambit fails because lost profits and royalties are mutually-exclusive damages categories. Assuming NetApp proves infringement, it can recover damages for every sale of an infringing product by BlueArc, either in the form of lost profits or a reasonable royalty. *See Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002). If NetApp can establish that, but for BlueArc's alleged infringement, it would have made a given sale itself, it can recover the profit it would have made on that sale. *See Grain Processing Corp. v. American Maize Prods.,* 185 F.3d 1341, 1350 (Fed. Cir. 1999). But if NetApp cannot establish that it would have made a given sale, its damages on that sale are limited to a reasonable royalty based on a hypothetical negotiation between a willing licensor and a willing licensee at the time of the alleged first infringement. *See Unisplay, S.A. v. American Electronic Sign Co., Inc.,* 69 F.3d 512, 517 (Fed. Cir. 1995). Because this is a purely binary distinction—NetApp either can prove it would have made a particular sale or it cannot—it may not recover both kinds of damages on the same sale. *See DSU Medical Corp. v. JMS North Am. Corp.*, 296 F. Supp. 2d 1140, 1149 (N.D. Cal. 2003) (citing *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l Inc.,* 246 F. 3d 1336, 1354 (Fed. Cir. 2001)).

Because the categories are distinct, the calculation of the appropriate royalty rate does not and cannot depend on the availability of lost profits for a particular sale. By definition, any sale on which a patentee recovers a royalty is a sale on which it could not prove its entitlement to lost profits. Conversely, any sale on which the patentee proves lost profits is a sale on which **no** royalty could be earned because, by definition, the patentee—not the defendant—is credited with

the sale.  The relevant multi-factor standard for calculating the proper royalty rate—upon which NetApp's expert relies and discusses at length, Stanton Decl. Ex. 4 at 26-47—makes no mention of the availability of lost profits as a basis for adjusting the royalty.  *See Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970).

Indeed, NetApp's expert expressly acknowledges that his analysis is result-oriented and aims to reach the same damages figure whether or not lost profits are available.  Stanton Decl. Ex. 4 at 25-26.  He rationalizes that a patentee who had recovered lost profits would be more likely to agree to a lower royalty rate than one who had not "already been made whole." *Id.* at 25.  In other words, if NetApp cannot recover lost profits directly, it should be allowed to recover lost profits as royalties.  This is contrary to the express bar on recovering lost profits and royalties on the same sale.  Moreover, as an analytical matter it makes no sense.  As noted above, a royalty must be calculated by conceiving a hypothetical negotiation at the time of first infringement.  *See Unisplay,* 69 F.3d at 517.  Plainly, at the time of first potential infringement, no patentee can possibly know whether it will eventually prevail in a patent-infringement suit, let alone be able to prove and recover lost profits on particular sales.  Further, the hypothetical royalty negotiation presupposes a "willing licensor," not one who plans to litigate a patent-infringement suit to judgment.  The irrelevance of an eventual lost-profits damages award to the calculation of a royalty is reflected in the fact that cases discussing royalty determinations simply do not take the availability of lost profits into account.

## IV.  CONCLUSION

NetApp has no right to recover its own lost profits for the time period before it purchased the patents-in-suit.  At most, it can recover Auspex's lost profits during that time period, because that was all Auspex could have assigned, and all NetApp could have purchased, when NetApp acquired the patents.  Neither can NetApp recover a higher royalty rate in the event it fails to make out a lost-profits case.  Lost profits and royalties are distinct and mutually-exclusive remedies in patent cases, and the appropriate royalty rate does not depend on whether lost profits are proven.

///

1    For all the above reasons, BlueArc is entitled to partial summary judgment on both of the
2    above damages issues.
3
4    Dated: April 29, 2005                           Respectfully submitted,
5                                                   KEKER & VAN NEST, LLP
6
7
8                                            By:   /s/ Shana N. Stanton
                                                   SHANA N. STANTON
                                                   Attorneys for Defendant
9                                                  BLUEARC CORPORATION