UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NETWORK APPLIANCE, INC.,

               Plaintiff,

     v.

BLUEARC CORP.,

               Defendant.

_____/

No. C 03-5665 MHP

**MEMORANDUM & ORDER**
**Re: Plaintiff's Motions for Summary**
**Judgment of Infringement; Defendant's**
**Motions for Summary Judgment of**
**Noninfringement**

       Plaintiff Network Appliance filed this action in the United States District Court for the District of Delaware, alleging infringement of three patents that relate to network file server architecture and operating system software.  On defendant's motion, the District of Delaware ordered the action transferred to this court on December 16, 2003.  Now before the court are plaintiff's motions for summary judgment that defendant has infringed a number of claims in two of three patents in suit, United States Patent Nos. 5,802,366 ("the '366 Patent") and 5,931,918 ("the '918 Patent").  Defendant opposes those motions and cross-moves for summary judgment of noninfringement.  Having fully considered the parties' arguments and submissions and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND

I.      The Patented Inventions

       The patents that are the subject of this infringement action relate to computer architectures and storage systems that were developed by Auspex Systems, Inc. in the late 1980s.[1]  Of the three patents in suit, two of the patents, the '366 and '918 Patents, are at issue in the instant motions for summary judgment. These patents disclose substantially identical multiprocessor file servers designed for the purpose of

1  processing requests from client computers in a networked computing environment.  In their preferred

2  embodiment, the patented file servers are configured to perform file operations in connection with the Unix

3  operating system and are comprised of at least one network controller, at least one file controller, at least

4  one storage processor, and a system memory.  '366 Patent, 7:64-8:1; '918 Patent, 7:66:8-3.  Each of the

5  processors performs operations necessary to satisfy "file system requests" made by client computers on a

6  data network.  '366 Patent, 4:16-23; '918 Patent, 4:18:25.  In addition, the specification discloses a local

7  "host" processor running the standard Unix operating system.  '366 Patent, 8:5-8:9; '918 Patent, 8:7-8:11.

8       Communications between the file server and the data network employ a number of protocols,

9  which are referred to in the art as "layers" because each protocol interacts only with those protocols that

10  immediately precede or follow that layer in the "protocol stack."  '366 Patent, 5:36-57; '918 Patent, 5:38-

11  59.  The preferred embodiment of the inventions specifically discloses IP (network), TCP/UDP (transport),

12  RPC (session), and XDR (presentation) layers, as well as a "network file system" ("NSF") (application)

13  layer.  '366 Patent, 5:28-7:11;  '918 Patent, 5:20-7:13.  The "highest-level" layer—i.e., the NSF

14  layer—contains the protocols necessary for carrying out file system-related task such as reading and writing

15  data.  '366 Patent, 6:53-7:11; '918 Patent, 6:55-7:13.[2]

16       A request to the file server is initiated when a client computer on the data network transmits an

17  Ethernet data packet containing the request to the network control module of the server.  See '366 Patent,

18  9:35-40; '918 Patent, 9:38-43.  The network controller initially determines whether the request is an NSF

19  request (i.e., a file system request).  Id.  Non-NSF requests are passed directly to the host processor

20  without further processing by the file server.  Id.  However, if the request is an NSF request, the network

21  controller converts the NFS requests into "Local Network File System" ("LNFS") format, which the file

22  server uses for internal communications involving NFS requests and responses.  See '366 Patent, 9:4-15;

23  '918 Patent, 9:7-18.  The LNFS-formatted request is then transmitted to the file system controller, which

24  searches the system memory for the requested information.  '366 Patent, 10:17-20; '918 Patent, 10:21-24.

25  If the requested information is found in system memory, the file controller sends a message directing the

26  network controller to a reference location in the system memory.  '366 Patent, 10:21-28; '918 Patent,

27  10:25-32.  Otherwise, the file controller directs the storage processor to read the requested data from the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

2

1   attached mass storage device and to transmit the data to system memory.  Id.  The file controller then

2   notifies the network controller of the location of the data.  Id.  Having received the system memory location,

3   the network controller retrieves the data from system memory and creates an "NFS [or file system] reply

4   message."  Id.  The reply message then is passed along to the client computer, thereby completing the

5   processing of the client's request.  Id.

6   II.     The Accused Devices

7        Defendant sells and offers for sale in the United States two network file server product lines known

8   as the "Silicon Server" and the "Titan" (collectively "Blue Arc Servers").  Joint Statement ¶¶ 3, 12.[3]  Each

9   of these file servers is designed to be used in connection with a "System Management Unit" ("SMU") that is

10  also sold and offered for sale by defendant.  Id. ¶ 17-18.  The Silicon Server, the Titan, and their

11  respective SMUs are each described below.

12       A.     The Silicon Server

13       The first group of devices accused of infringement includes defendant's Si7500-, Si8300-, Si8700-,

14  and Si8900-model network file servers (collectively "Silicon Servers").  Joint Statement ¶¶ 2-3.[4]  Like the

15  patented inventions, the Silicon Server operates in a networked computing environment and serves the

16  function of managing data requests that originate from client computers on a data network.  These requests

17  may include both file system requests and other, non-file system requests not related to the storage or

18  transfer of data.  In turn, the file system requests directed to the Silicon Server are typically comprised of

19  both NFS requests and requests that require the processing of other protocols such as file transfer protocol

20  ("FTP") or common internet file system ("CIFS") protocol.  Lycklama Decl. ¶ 23.

21       The Silicon Server resembles the preferred embodiment of the patents in suit in that it is comprised

22  of three basic hardware components (or "boards"): a network interface board, a file system board, and

23  storage interface board.  Joint Statement ¶¶ 5, 9-11.  Each of the boards includes a microprocessor and its

24  associated memory, which stores a proprietary, microprocessor-specific program code that controls the

25  operation of that microprocessor.  Id. ¶ 6.  In addition, each board contains multiple programable

26  microchips known as "field programmable gate arrays" ("FPGAs").  Id. ¶ 7. Communication between the

27  boards takes place via a direct inter-processor connection or, alternatively, a high-speed serial connection.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Id. ¶ 8; Kim Decl., Exh. 7 at 31 & Exh. 24 at 4.

2  As its name suggests, the network interface board receives data requests from client computers via

3  the network.  The lower-level layers (up to and including the transport layer) of the incoming request are

4  processed by the network interface board, which then passes the request along to the file system board.

5  Willis Decl. ¶¶ 9-14.  Upon receiving the request, the file system board processes the higher-level layers of

6  the data packet and determines whether the request is a file system request.  Id.  If so, the file system board

7  converts the file system request into "whizzy disk protocol" ("WDP") format and transfers the WDP-

8  formatted request to the storage interface board, which performs the necessary procedures for retrieving

9  data from mass storage or cache memory or writing data to the mass storage device.  Joint Statement ¶¶ 9-

10  10.  After reading or writing the data, the file system board generates a WDP response message and

11  converts the response message to its original (non-WDP) format.  Id. ¶ 11.  Finally, the response message

12  is communicated to the requesting client via the network interface board, thereby completing the server's

13  response to the client's request.  Id.

14  B.    The Titan

15  Defendant also sells and offers for sale a more advanced network file server model known as "the

16  Titan."  Joint Statement ¶ 12.  While based on much of the same technology as the Silicon Server models,

17  the Titan differs from earlier BlueArc file servers in that some of the operations executed by

18  microprocessors in the Silicon Server are performed by FPGAs in the Titan.  Id. ¶¶ 12-13.  Nonetheless,

19  the basic architecture of the Titan, in which the network interface, file system management, and storage

20  interface tasks are divided between three separate hardware "modules," remains substantially identical to

21  defendant's earlier models.  Id.  In addition, each of these modules performs functions equivalent to those

22  performed by the corresponding board found in the Silicon Server.  Id. ¶¶ 13-15.

23  C.    The SMU

24  In addition to the file servers described above, defendant promotes and sells "system management

25  units" ("SMUs") for use in connection with both the Silicon Server and the Titan.  Joint Statement ¶¶ 17-

26  18.  The Silicon Server and Titan SMUs (collectively "BlueArc SMUs") are based on a standard,

27  commercially available microprocessor programmed to run a general-purpose operating system (Red Hat

28

4

Linux, version 7.2).  Id. ¶ 20.  When configured in combination with a Silicon Server or a Titan server, an SMU provides network administrators with a variety of tools, applications, and protocols for configuring and maintaining the server.  Id. ¶¶ 17, 19.  Among the system management functions that can be performed by the SMUs are anti-virus support, accelerated data copy functions, secure shell ("SSH") support, scripting support, and remote management access.  Kim Decl., Exh. 30 at 13 & Exh. 31 at 74.

The SMUs can be configured to access the file servers either via the data network used by client computer ("inband" mode) or through a management network that is segregated from the client's network ("sideband" mode).  Id., Exh. 31 at 74-75.  In either configuration, the SMUs enable network administrators to access system management utilities using either a web-based (HTTP or HTTPS) interface or a command line interface ("CLI") such as SSH.  Id.  While both the Silicon Server and Titan files servers can be managed without an SMU, see id. at 71, the Titan Server is only available for purchase in combination with a Titan SMU.  Joint Statement ¶ 18.

III.    Procedural History

On July 15, 2003, plaintiff filed an action in the United States District Court for the District of Delaware, alleging that defendant had infringed its exclusive rights in the '366 and '918 Patents as well as in a related patent for network file server operating system software that is not relevant to the instant motions. That action was transferred to this court on December 16, 2003.  Following Markman hearings held on September 30, 2004 and December 7, 2004, the court issued two separate orders construing the claims of the patents in suit.  See November 30, 2004 Claim Construction Order (hereinafter "First Claim Construction Order") (construing non-means-plus-function claim terms); January 7, 2005 Claim Construction Order (hereinafter "Second Claim Construction Order") (construing means-plus-function terms).

On February 28, 2005, plaintiff filed motions for summary judgment of infringement as to both the '366 and '918 Patents, asserting that the BlueArc Servers infringe claims 7 through 16 of the '918 Patent and that the apparati comprised of the Blue Arc Servers and their associated SMUs infringe claims 1 and 3 of the '366 Patent.  Defendant opposes those motions and cross-moves for summary judgment of noninfringement with respect to each of the asserted claims.  In addition, defendant moves for summary

5

1  judgment with respect to claim 4 of the '366 Patent.  The following memorandum and order addresses each

2  of these motions.

3

4  LEGAL STANDARD

5  I.      Summary Judgment

6          As in any other civil action, summary judgment is proper in a patent infringement action when the

7  pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the

8  moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Southwall Techs.,

9  Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir.), cert. denied, 516 U.S. 987 (1995).  Material

10 facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

11 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

12 return a verdict in favor of the nonmoving party.  Id.

13         The party moving for summary judgment bears the burden of identifying those portions of the

14 pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.

15 Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have

16 the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to

17 support the nonmoving party's case."  Id. at 325; Crown Operations Int'l, Ltd. v. Solutia, Inc., 289 F.3d

18 1367, 1377 (Fed. Cir. 2002).  On the other hand, where the moving party bears the burden of proof on an

19 issue, it must submit evidence sufficient to establish that no reasonable jury could find against it on that issue

20 at trial.  See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.3d 1370, 1376

21 (Fed. Cir. 2004); Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001), cert. denied, 534 U.S.

22 1114 (2002).

23 II.     Patent Infringement

24         Under section 271 of the Patent Act, 35 U.S.C. § 271, liability for patent infringement may be

25 imposed on any person who without permission of the patentee "makes, uses, offers to sell, or sells any

26 patented invention[] within the United States or imports into the United States any patented invention during

27 the term of the patent therefor."  Id.  The rights granted to the patentee are defined by the patent's claims.

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1   *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 373 (1996).  In determining whether an allegedly

2   infringing device falls within the scope of the claims, a two-step process is used: first, the court must

3   determine as a matter of law the meaning of the particular claim or claims at issue; and second, it must

4   consider whether the accused product infringes one or more of the properly construed claims.  *Id.* at 384;

5   *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002).  The second inquiry is a

6   question of fact, although summary judgment of infringement or noninfringement may nonetheless be

7   appropriate when no genuine dispute of material fact exists.  *Irdeto Access, Inc. v. Echostar Satellite*

8   *Corp.*, 383 F.3d 1295, 1299 (Fed. Cir. 2004) (quoting *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353

9   (Fed. Cir. 1998)).

10          The patentee bears the burden of proving infringement by a preponderance of the evidence.

11  *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  This burden can be met by

12  showing that the patent is infringed either literally or under the doctrine of equivalents.  *See* *Linear Tech.*

13  *Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004).  To support a finding of literal

14  infringement, the patentee must establish that "every limitation recited in the claim appears in the accused

15  product, i.e., the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc. v.*

16  *Dillon Co.*, 205 F.3d 1377, 1382 (Fed. Cir. 2000) (citing *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d

17  1554, 1562 (Fed. Cir. 1996)).  Alternatively, where one or more elements of the claim are not literally

18  present in the allegedly infringing product or process, infringement may nonetheless be found under the

19  doctrine of equivalents if the differences between the accused device and the patented invention are

20  "insubstantial."  *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir.

21  2004) (quoting *Eagle Comtronics, Inc. v. Arrow Communication Labs., Inc.*, 305 F.3d 1303, 1315 (Fed.

22  Cir. 2002)), *petition for cert. filed*, 73 U.S.L.W. 3146 (2004).  As with literal infringement, this inquiry

23  requires an element-by-element comparison of the patented invention to the accused device.

24  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).  Consequently, in applying the

25  doctrine of equivalents, the court must consider whether the accused device "contain[s] elements that are

26  either identical or equivalent to each claimed element of the patented invention."  *Id.*; *EMI Group N. Am.,*

27  *Inc. v. Intel Corp.*, 157 F.3d 887, 896 (Fed. Cir. 1998), *cert. denied*, 526 U.S. 1112 (1999).

28

Under the classic formulation of the doctrine set forth in <u>Graver Tank & Manufacturing Co. v. Linde Air Products Co.</u>, 339 U.S. 605 (1950), a feature of the accused device is "equivalent" to an element of claimed invention if it performs substantially the same function in substantially the same way to achieve substantially the same result.  <u>Id.</u> at 608 (citations omitted); <u>see also</u> <u>Schoell v. Regal Mar. Indus., Inc.</u>, 247 F.3d 1202, 1209-10 (Fed. Cir. 2001).  However, as the Supreme Court subsequently acknowledged in <u>Warner-Jenkinson</u>, this particular "linguistic framework" may not be appropriate in every case.  520 U.S. at 39-40.  Rather, the Court observed that "[a]n analysis of the role played by each element in the context of the specific patent claim [must] inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element."  <u>Id.</u> at 40.  A number of other considerations may also be relevant in determining the range of equivalents to which the claimed invention is entitled, including the prosecution history of the patent in suit, the pioneer status of the invention (or lack thereof), and the limitations on patentability of the allegedly equivalent device that would have been imposed by prior art extant at the time that the patent application was filed.  <u>Intel Corp. v. International Trade Comm'n</u>, 946 F.2d 821, 842 (Fed. Cir. 1991); <u>see also</u> <u>K-2 Corp. v. Salomon S.A.</u>, 191 F.3d 1356, 1366-68 (Fed. Cir. 1999).

UNITED STATES DISTRICT COURT
For the Northern District of California

1    DISCUSSION

2    I.      Infringement of '918 Patent, Claims 7 through 16

3            The court first considers whether summary judgment on the issue of infringement is appropriate with

4    respect to claims 7 through 16 of the '918 Patent.  Claim 7, the first of two independent claims at issue,

5    reads as follows:

6            A network file server for use with a data network and a mass storage device, said network
             file server comprising:
7
             a network control module, including a network interface coupled to receive file system
8            requests from said network;

9            a file system control module, including a mass storage device interface coupled to said mass
             storage device; and
10
             a communication path coupled directly between said network control module and said file
11           system control module, said communication path carrying file retrieval requests prepared by
             said network control module in response to received file system requests to retrieve
12           specified retrieval data from said mass storage device,

13           said file system control module retrieving said specified retrieval data from said mass
             storage device in response to said file retrieval requests and returning said specified retrieval
14           data to said network control module,

15           and said network control module preparing reply messages containing said specified
             retrieval data from said file system control module for return transmission on said network.
16
     '918 Patent, 127:45-62.  The second independent claim, claim 12, recites:
17
             A method for processing requests from a data network, for use by a network file server
18           including a network control module coupled to receive file system requests from said
             network and a file system control module coupled to said mass storage device, comprising
19           the steps of:

20           said network control module preparing file retrieval requests in response to received file
             system requests to retrieve specified retrieval data from said mass storage device;
21
             said network control module communicating said file retrieval requests directly to said file
22           system control module;

23           said file system control module retrieving said specified retrieval data from said mass
             storage device in response to said file retrieval requests and returning said specified retrieval
24           data to said network control module; and

25           said network control module preparing reply messages containing said specified retrieval
             data from said file system control module for return transmission on said network.
26

27

28

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Id. at 128:20-40.  For purposes of the instant motions, the device claimed in claim 7 and the method

2   recited in claim 12 can be treated as identical.

3        To prevail on its motion for summary judgment, plaintiff must show that a reasonable jury would be

4   compelled to find that every element of the claims at issue is present in the BlueArc Servers.  See Irdeto,

5   383 F.3d at 1299.  Because plaintiff has met its initial burden of production by identifying the elements of

6   the accused devices that correspond to the limitations of the claims 7 through 16 of the '918 Patent, see

7   Faillace Decl., Exh. 5, the court focuses on the elements of claims 7 and 12 that defendant asserts are

8   absent from the BlueArc Servers: namely, a "network control module preparing file retrieval requests in

9   response to received file system requests to retrieve specified retrieval data from [a] mass storage device"

10  and "[a] network control module preparing reply messages containing . . . specified retrieval data from [a]

11  file system control module for return transmission on [a data] network."  '918 Patent, 128:26-29, 128:37-

12  40 (quoting claim 12).  While there is no dispute that the network interface boards of the BlueArc Servers[5]

13  perform some of the same functions as the claimed network control module, defendant asserts that the

14  functions of "preparing file retrieval requests" and "preparing reply messages" are not among them.  Rather,

15  according to defendant, those functions are carried out by the servers' file system boards, which process

16  the highest-level layers of data packets that contain file system requests.  Thus, defendant argues that the

17  identified claim limitations do not read on the network interface boards of the accused devices.

18       As always, the first step of the infringement analysis requires the court to construe the disputed

19  claim elements as a matter of law.  Allen Eng'g Corp, 299 F.3d at 1344.  Despite the fact that the court has

20  already issued two orders construing the claims of the '918 Patent, defendant now raises a number of

21  arguments that seek to impose limiting constructions on the "preparing file retrieval requests" and "preparing

22  reply messages" claim elements.  First, defendant contends that these elements require the claimed invention

23  to "internally reformat" file system requests from the network for the purpose of converting those requests

24  into "file retrieval requests."  Def.'s Opp'n Re '918 Patent at 9-10.  However, such an argument is

25  foreclosed by the court's November 30, 2004 claim construction order.  That order expressly declined

26  defendant's invitation to read limitations from the '918 Patent's specification into the terms "file retrieval

27  requests prepared," "preparing file retrieval requests," and "preparing reply messages," concluding that the

28  ordinary meaning of those terms is "unambiguous and need not be construed by the court."  First Claim

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Construction Order at 14.  In reaching that conclusion, the court distinguished the various "preparing" terms

2    from the "decoding" and "encoding" limitations that appear in claims 1 and 4 of the '918 Patent.  See id.

3    The court construed the latter two terms to connote a process of translation by which file system requests

4    are converted from one format to another.  Id. at 11.  However, in examining the various "preparing" terms,

5    the court observed that the verb "to prepare" encompasses a host of processes that do not necessarily

6    require the translation (or as defendant now puts it, the internal reformatting) of incoming file system

7    requests or outgoing reply messages.  See id. at 14.  Thus, when properly construed, claims 7 and 12 of the

8    '918 Patent may read on the BlueArc Servers regardless of whether the network interface boards of the

9    accused devices "internally reformat" file system requests or reply messages.

10         Alternatively, defendant contends that even if the claims at issue do not require "reformatting" of file

11   system requests and reply messages, "preparing" a file retrieval request must at a minimum encompass

12   recognizing or interpreting the contents of that request if the

13   claim terms "file system requests" and "file retrieval requests" are to be given distinct meanings.  The clear

14   implication of this argument is that the "preparation" of file retrieval requests by the claimed network control

15   module must include processing the protocol layer that contains the information identifying an incoming data

16   packet as a file system request.  Because this information resides in the highest-level (application) layer

17   protocol (e.g., NFS), Joint Statement Re Def.'s Mot. Re '918 Patent ¶ 2, it thus follows from defendant's

18   argument that the network control module of the patented invention must process all of the lower-level

19   protocol layers up to and including NFS.  See Willis Decl. ¶¶ 9-11.  However, as with defendant's

20   "internal reformatting" argument, the propriety of imposing a "processing all protocol layers" limitation on

21   the claim terms at issue has also been considered and rejected by the court.  Indeed, the court's November

22   2004 claim construction order makes clear that nothing in the record warrants reading such a limitation into

23   the claim.  First Claim Construction Order at 12, 14.  Seeing that defendant offers no reason why that

24   decision should be revisited here, the court must decline its thinly veiled invitation to do so.

25         This leaves the court with the task of comparing the properly construed (that is to say, ordinary)

26   meaning of the "preparing file retrieval requests" and "preparing reply messages" claim terms to the

27   functions performed by the network interface boards of the accused devices.  The court has already

28   recognized that as used in the patents in suit, the verb "to prepare" encompasses a wide range of actions

11

that the network control module of the claimed invention might carry out. <u>Id.</u> at 13-14.  In light of this broad definition, it is apparent that any reasonable juror would find that "preparing file retrieval requests" includes the type of lower-level protocol processing that is performed by the BlueArc Servers' network interface boards before they pass the file retrieval requests to the servers' file system boards.  By the same reasoning, a reasonable jury would be compelled to find that the processing of lower-layer protocols amounts to "preparing" the reply messages that are sent to client computers on the data network in response to file system requests.

Because defendant does not dispute that the remaining elements of claims 7 and 12 read on the accused devices, summary judgment of infringement with respect to those claims is appropriate.  As to the additional limitations of the dependent claims of the '918 Patent at issue, defendant disputes only the presence of the claim elements requiring that the accused network control boards "further prepare[] file storage requests in response to received file system requests," which appears in claims 9 and 10, and the substantially identical "preparing file storage requests" limitation in method claims 14 and 15.  '918 Patent, 128:6-9, 128:46-48.  However, defendant's attempt to avoid infringement based on the absence of these claim elements in the accused devices merely repeats its assertion that "preparing" a request must involve reformatting, interpreting, or recognizing that request.  Thus, for the reasons stated above, summary judgment of infringement is also appropriate with respect to the dependent claims 8 through 11 and 13 through 16.  The court therefore grants plaintiff's motion for summary judgment that the Silicon Server and Titan file servers literally infringe claims 7 through 16 of the '918 Patent.

UNITED STATES DISTRICT COURT
For the Northern District of California

II.     Infringement of '366 Patent, Claims 1 and 3

The parties also cross-move for summary judgment as to whether defendant's network file servers infringe several claims of the '366 Patent, with both parties asserting that they are entitled to judgment as a matter of law with respect to claims 1 and 3.  In addition, defendant moves for summary judgment of noninfringement with respect to claim 4.  The parties agree that the infringement inquiry turns on whether the accused devices meet the limitations of claim 1, which claims the following:

> Apparatus for use with a data network and a mass storage device, comprising the combination of first and second processing units,
>
> said first processing unit being coupled to said network and performing procedures for satisfying requests from said network which are within a predefined non-NFS class of requests,
>
> and said second processing unit being coupled to said network and to said mass storage device and decoding NFS requests from said network, performing procedures for satisfying said NFS requests, and encoding NFS reply messages for return transmission on said network, said second processing unit not satisfying any requests from said network which are within said predefined non-NFS class of requests.

'366 Patent, 51:35-49.

In asserting that claim 1 of the '366 Patent is literally infringed by the BlueArc Servers, plaintiff once again bears the burden of proving that every limitation recited in the claim appears in defendant's products.  See Irdeto, 383 F.3d at 1299.  Here, plaintiff identifies the accused devices as being comprised of one of the BlueArc SMUs and one of the BlueArc Servers, which it asserts respectively meet the limitations of the first and second processing units recited in the claimed invention.  Defendant disputes this assertion and agues that summary judgment of noninfringement is warranted because no reasonable jury could find that every element of the first and second processing units is literally or equivalently present in the accused devices.  Alternatively, defendant urges the court to deny plaintiff's motion because triable issues of material fact remain as to whether

1   the SMU-server combinations are "apparat[i]" within the meaning of claim 1.  The court considers these

2   arguments below.

3          A.      First and Second Processing Units

4                  1.      Literal Infringement

5          The court first considers whether the BlueArc SMUs and BlueArc Servers respectively contain

6   every element of the first and second processing units recited in claim 1.  While defendant does not dispute

7   that the SMUs and the servers are "processing units," it identifies two functionally defined claim elements

8   that are not present in the SMU-server combinations that make up the accused devices.  The first of these

9   elements recites a "first processing unit" that "perform[s] procedures for satisfying requests from [a data]

10  network which are within a predefined non-NFS class of requests."  The second claim element at issue

11  requires that "second processing unit" meet the negative limitation "not satisfying any requests from said

12  network which are within said predefined non-NFS class of requests."  Defendant argues that because

13  there is no "predefined non-NFS class of

14  requests" for which both of these limitations read on the accused devices, it is entitled to summary judgment

15  of noninfringement.

16         Once again, the court begins the infringement inquiry where its November 2004 claim construction

17  order left off.  In that order, the court held that the various "performing procedures" terms of '366 Patent

18  must be given their ordinary and customary meaning.  First Claim Construction Order at 10.  Furthermore,

19  having not been asked by the parties to construe the meanings of the terms "satisfying" or "request," the

20  court assumes that those terms are also intended to carry their ordinary lay meaning in the claims at issue.

21  See CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366  (Fed. Cir. 2002) (citation omitted)

22  (noting that courts must "indulge a 'heavy presumption' that a claim term carries its ordinary and customary

23  meaning") (citations omitted).  Like the verb "to perform," the ordinary meaning of "to satisfy"

24  encompasses a wide range of actions.  Nonetheless, at least one dictionary definition suggests that

25  "satisfying" a request involves "fulfilling" or "complying with" that request.  14 The Oxford English

26  Dictionary 505 (2d ed. 1989) (definition of "satisfy").[6]  This definition accurately reflects the sense in which

27  the term "satisfying requests" is used in the '366 Patent.  The preferred embodiment of the invention

28  discloses a "first processing unit" (the "local host") that responds to a class of non-NFS requests from client

UNITED STATES DISTRICT COURT
For the Northern District of California

14

1  computers on a data network.  '366 Patent, 10:60-11:53.  According to the specification, the local host

2  computer "has three main purposes: to run Unix, to provide standard ONC [i.e., Sun Open  Network

3  Computing] network services for clients, and to run a Server Manager."  Id. at 10:61-63.  By carrying out

4  these tasks in response to requests from clients on the data network, the local host computer performs

5  procedures for "satisfying"—i.e., for fulfilling—such requests.  The court thus construes the claim term

6  "satisfying requests" according to its ordinary meaning: that is to say, "fulfilling" or "complying with"

7  requests.

8        Of course, if "satisfying" a request means "fulfilling" or "complying with" that request, it necessarily

9  follows that the claimed second processing unit, which does "not satisfy[] any requests from said network

10  which are within said predefined non-NFS class of requests," does not fulfill or comply with requests that

11  fall within that predefined class.  Obviously, a request that is not directed toward or routed through a

12  processing unit is "not satisfied" by that processing unit.  However, as the preferred embodiment of the

13  claimed invention illustrates, it is also possible for a processing unit to receive and transfer a client's request

14  without "satisfying" that request.  Indeed, the specification describes a "second processing unit" that

15  receives non-NFS requests, identifies the nature of those requests, and passes them to the host computer

16  for processing.  '366 Patent, 8:18-22, 9:49-50.  If the claims of the '366 Patent are construed to read on

17  the preferred embodiment of the invention, as they almost always must be, see Vitronics Corp. v.

18  Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir.1996), the actions taken by the disclosed file server to

19  recognize and transfer non-NFS requests cannot be deemed to "satisfy" those requests.  Thus, a request

20  may be "not satisfied" within the meaning of claim 1 if it is received, recognized as a request within a

21  predefined non-NFS class of requests, and transferred without taking any action for the purpose of fulfilling

22  or complying with that request.

23        Having clarified the definition of the "performing procedures" and "satisfying" claim terms, the court

24  turns to the accused devices.  To establish infringement, plaintiff must identify a "predefined non-NFS class

25  of requests" processed by the accused SMU-server combinations that meets, inter alia, the following two

26  limitations: first, the SMUs must "perform[] procedures for satisfying requests from [a data] network which

27  are within a predefined non-NFS class of requests"; and second, BlueArc Servers must "not satisfy[] any

28  requests from said network which are within said predefined non-NFS class of requests."  Plaintiff's expert

15

UNITED STATES DISTRICT COURT
For the Northern District of California

1    characterizes the predefined non-NFS class of requests not satisfied by the servers as "advanced

2    management functions provided by the SMU, such as anti-virus support, SSH support, and scripting."

3    Faillace Decl., Exh. 4 at 1.4.  Although "advanced management functions" is not defined with any precision

4    by either party, plaintiff at times appears to suggest that "advanced" management functions are any

5    management functions that can be performed by employing an SMU-server combination that cannot be

6    performed by a stand-alone BlueArc Server.  See Pl.'s Reply Br. Re '366 Patent at 8 n.3.

7         For reasons that will become apparent below, it is debatable whether such "advanced management

8    functions" comprise a "predefined non-NFS class of requests."  However, even giving plaintiff the benefit of

9    its somewhat circular definition of the scope of this predefined class of requests, it is far from clear that

10   every request in that class is "not satisf[ied]" by the BlueArc Servers.  For example, one type of request

11   that is satisfied by the BlueArc SMUs is the category of requests known as secure shell, or SSH, requests.

12   Kim Decl., Exh. 30 at 17 & Exh. 31 at 74.  The SSH protocol permits network administrators to access a

13   variety of server management utilities from a client computer on the network using a secure command line

14   interface.  Garbagnati Decl. ¶¶ 20-21; Lycklama Decl. ¶ 28.  Given that neither the Silicon Server nor the

15   Titan support SSH unless they are configured in combination with an SMU, Kim Decl., Exh. 30 at 17 &

16   Exh. 31 at 70-71; Garbagnati Decl. ¶¶ 20-21, there is no doubt that SSH requests are "advanced

17   management requests."  Nonetheless, many of the management utilities that are accessed via the requests

18   are actually executed by the BlueArc Servers.  Garbagnati Decl. ¶¶ 20-21.  While it is true that determining

19   whether a particular request is "not satisf[ied]" by the BlueArc Servers is a question of fact, it would vitiate

20   the "not satisfying" limitation to suggest that executing a program in response to a request from a client

21   computer on the network—even when received indirectly—does not amount to "satisfying" that request.

22   Thus, the class of requests that plaintiff refers to as "advanced management requests" is too broad to

23   support a finding that every element of claim 1 of the '366 Patent is present in the accused devices.

24        Defendant asserts that this conclusion is by itself sufficient to warrant granting summary judgment of

25   noninfringement, arguing that there can be no "predefined non-NFS class of requests" for which the SMU-

26   server combinations meet every limitation of claim 1 unless that "predefined class" encompasses all non-

27   NFS requests that are directed to the SMUs.  This is little more than an attempt to limit the claimed

28   invention to its preferred embodiment, which is improper "absent a clear indication in the intrinsic record

1   that the patentee intended the claims to be so limited."  See Liebel-Flarsheim Co. v. Medrad, Inc., 358

2   F.3d 898, 913 (Fed. Cir.), cert. denied, __ U.S. __, 125 S. Ct. 316 (2004).  Because any indication of

3   such an intent is absent here, the court instead looks to the ordinary meaning of the disputed claim term,

4   which requires only that the class of requests not satisfied by the claimed second processing unit be (1)

5   predefined and (2) comprised of non-NFS requests.  As far as what constitutes a "predefined" class of

6   requests, defendant itself proposes to define that term as a class of requests that "ha[s] been defined

7   beforehand in the design or configuration of the subject [file server]."  Def.'s Opp'n Re '366 Patent at 7

8   (citing Lycklama Decl. ¶ 20).   Nothing in this definition suggests that such a class of requests must

9   encompass any particular subset of non-NFS requests sent by client computers on the network, and it

10  certainly does not support defendant's view that the claimed predefined non-NFS class of requests must be

11  comprised of all requests that are directed at the first processing unit of the patented invention.  The court

12  therefore rejects defendant's attempt to avoid infringement on this basis.[7]

13      Having rejected defendant's invitation to improperly narrow the "predefined class" claim term, it is

14  apparent that plaintiff can prove infringement by showing that the elements of claim 1 are met for any subset

15  of non-NFS requests that is a "predefined . . . class of requests"—that is to say, a class of requests that is

16  defined beforehand in the design or configuration of the accused devices.  To this end, plaintiff has identified

17  a number of different categories of management requests that it claims are "not satisfied" by the BlueArc

18  Servers.  Specifically, the court focuses on "anti-virus support requests," a type of  management request

19  that involves scanning data files for computer viruses.  In light of the preceding discussion, there can be no

20  serious dispute that anti-virus support requests comprise a "predefined non-NFS class of requests."

21  However, even assuming this to be so, defendant contends that the virus scanning functions performed by

22  the accused devices cannot support a finding of infringement because the SMUs do not perform

23  procedures for satisfying anti-virus support requests from client computers on the network.

24      In addressing this argument, the court must first draw a distinction between the Silicon Server SMU

25  and the Titan SMU.  In the latter device, virus scanning procedures are not supported by the SMU in any

26  way.  Kim Decl., Exh. 31 at 74 ("[The Titan SMU] does not support anti-virus scanning for Titan CIFS

27  clients.   This functionality is now implemented directly by Titan . . . ."); see also Garbagnati Decl. ¶ 24.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Thus, because the Titan SMU does not "perform procedures" for satisfying anti-virus support requests, the

2    SMU-Titan combination cannot infringe claim 1 based on the processing of that class of requests.

3         A different analysis is required with respect to the Silicon Server SMU, however.  In order to

4    understand why this is the case, it is necessary to summarize briefly how a Silicon Server and its associated

5    SMU perform virus-scanning-related operations.  In particular, it is essential to understand that neither the

6    SMU nor the server executes the virus scanning software; rather, a network connected to a Silicon Server

7    employs a stand-alone processor configured as a virus scanner that is separate from both the SMU and the

8    server.  Kim Decl., Exh. 30 at 16.  It is this virus scanner, which is not sold or supported by defendant, that

9    executes commercially available virus scanning software in response to a virus scanning request.  Id. at 14,

10   16; Garbagnati Decl. ¶ 23.  Such a request is initiated when a client computer closes or renames a file.

11   Kim Decl., Exh. 30 at 16; Garbagnati Decl. ¶ 23.  The client then sends a CIFS-formatted request to the

12   server, which passes a message to the SMU indicating the name of the file.  Kim Decl., Exh. 30 at 16;

13   Garbagnati Decl. ¶ 23.  On receipt of the file name, the SMU either locates the path of the file in its cache

14   memory or, if the file has not been recently accessed, sends a request for the file path to the server.  Id.

15   Finally, the SMU forwards the file name and file path to the stand-alone virus scanner, which scans the file.

16   Id.

17        Defendant characterizes the process by which the Silicon Server SMU forwards the file name and

18   path to the virus scanner as "issu[ing] a virus scan request to the third-party virus scan server."  Def.'s

19   Opp'n Re '366 Patent at 12 (original emphasis omitted).  That may be so, but the question of whether that

20   process amounts to "performing procedures for satisfying" a virus scan request must be read in light of the

21   breadth of the "performing procedures" claim limitation.  As the court observed in its November 2004

22   claim construction order, "[t]he claim language of the patents in suit makes clear that the term 'performing

23   procedures' is intended to be given an extraordinarily broad meaning."  First Claim Construction Order at

24   9.  Consequently, the court rejected defendant's attempt to limit the meaning of the various "performing

25   procedures" terms in the '366 Patent to encompass only "executing software instructions" and construed

26   the term according to its ordinary and customary meaning.  Id. at 9-10.  Thus, while it is true that the SMU

27   does not execute virus scanning software (although that is not to say that it does not "execute software

28   instructions"), there is no requirement that it must do so in order to meet the "performing procedures for

UNITED STATES DISTRICT COURT
For the Northern District of California

satisfying requests" limitation of claim 1.  Rather, the proper inquiry focuses on whether the steps taken by the Silicon Server SMU in response to request for the data network (i.e., providing the virus scanner with the name and path of files to be scanned for viruses) are "procedures" performed for the purpose of scanning files for viruses.  The record makes clear that a reasonable juror would be compelled to answer that question in the affirmative and would therefore conclude that the "performing procedures for satisfying requests" claim element reads on the Silicon Server SMU.

Admittedly, the conclusion that the Silicon Server SMU meets the "performing procedures for satisfying requests" limitation implies that the Silicon Server itself also performs procedures for the purpose of scanning files for viruses.  As noted above, the Silicon Server receives requests to close or modify a file from client computers on the network, passes those requests along to the SMU, and, if necessary, provides the SMU with the paths of files to be scanned.  Kim Decl., Exh. 30 at 16; Garbagnati Decl. ¶ 23.  Each of those actions is a "procedure" performed for the purpose of scanning a file for viruses.  However, nothing in the '366 Patent precludes the second processing unit of the claimed invention from performing procedures for satisfying requests that fall within the predefined non-NFS class of requests.  Rather, the relevant claim limitation states that the second processing unit must "not satisfy[] any requests from said network which are within said predefined non-NFS class of requests."  This limitation is clearly met where the predefined non-NFS class of requests satisfied by the Silicon Server-SMU combination is comprised of anti-virus support requests, which are "satisf[ied]" by a stand alone virus scanner.

In short, where the predefined non-NFS class of requests that is "not satisf[ied]" by the server is comprised of "anti-virus support requests," there is no question that the "performing procedures" and "not satisfying requests" elements of claim 1 read on the SMU-Silicon Server combination. However, defendant also points to an additional limitation that claim 1 imposes on the predefined non-NFS class of requests claimed by the patent: namely, that the class of requests originate from a data network.  In the SMU-Silicon Server device, such virus scan "requests" are initiated when the client sends a CIFS-formatted message directing the server to close or modify a file.  Garbagnati Decl. ¶ 23.  These requests ultimately trigger the stand-alone virus scanner to respond by scanning the closed or modified file for viruses, but it is far from clear that this virus scanning "request" originates from the client computer rather than from the accused device itself.  The answer to this question requires comparison of the properly construed claim with the

UNITED STATES DISTRICT COURT
For the Northern District of California

1    allegedly infringing devices, which is to say that its  involves questions of fact.  See, e.g., Beckson Mar.,

2    Inc. v. NFM, Inc., 292 F.3d 718, 724 (Fed. Cir. 2002); Kegel Co. v. AMF Bowling, Inc., 127 F.3d

3    1420, 1425 (Fed. Cir. 1997).  Accordingly, because reasonable jurors could differ as to whether such anti-

4    virus support "requests" originate from the data network, the court holds that this issue precludes summary

5    judgment as to whether the device comprised of the Silicon Server and its associated SMU infringes claim

6    1 of the '366 Patent based on the procedures that this accused device performs for the purpose of scanning

7    files for viruses.

8        That conclusion leaves the court to consider whether another predefined non-NFS class of requests

9    supports a finding of infringement by the SMU-server combinations, which, as noted above, cannot be

10   found to infringe as a matter of law based on the procedures used to satisfy anti-virus support requests.

11   Plaintiff proposes a host of other categories of requests that purportedly meet every limitation of claim 1,

12   including CLI, web management, Telnet, SNMP, Port Mapper, and Server Manager requests.  Pl.'s Reply

13   Br. Re '366 Patent at 7-8.[8]  The record clearly indicates that the BlueArc SMUs are involved in responding

14   to many of the requests that fall within these categories.  See, e.g., Kim Decl., Exh. 31 at 74; Garbagnati

15   Decl. ¶¶ 14-18.  However, proof of infringement also requires plaintiff to show that none of the requests

16   that are included in one or more of the aforementioned categories is "satisfied" by one of the BlueArc

17   Servers—for example, by being passed from the SMU to the server and ultimately executed by the server.

18   See, e.g., Garbagnati Decl. ¶ 17 (discussing the processing of HTTPS requests).[9]  Nor is it entirely clear

19   which, if any, of these categories is sufficiently general to be a "class" of predefined non-NFS requests.

20   See id. ¶ 21 (describing various "secure shell" protocols that permit remote access to server management

21   utilities); see also id. ¶ 15 (discussing different categories of CLI functions, some of which are performed on

22   the SMUs and some of which are performed by the servers).  Once again, the adjudication of such issues

23   requires the finder of fact to compare the claims as construed by the court with the allegedly infringing

24   devices, and the court is unable to conclude as a matter of law that no reasonable juror would find for one

25   party or the other.  Thus, because both the "predefined class" and the "not satisfying" limitations must read

26   on each of the accused devices to support a finding of literal infringement, the court holds that genuine

27   issues of material fact preclude entry of summary judgment on the issue of whether claim 1 of the '366

28   Patent is literally infringed by the accused SMU-server combinations.

2.     Doctrine of Equivalents

Although the court has identified genuine disputes of material fact that preclude summary judgment on the issue of whether claim 1 of the '366 Patent reads literally on the accused SMU- server combinations, plaintiff also seeks summary judgment of infringement under the doctrine of equivalents.  "Equivalence is shown by evidence that the accused device contains an element that is not 'substantially different' from any claim element that is literally lacking."  Kraft Foods, Inc. v. International Trading Co., 203 F.3d 1362, 1371 (Fed. Cir. 2000) (quoting Warner-Jenkinson, 520 U.S. at 40).  Alternatively, a finding of infringement under the doctrine of equivalents may be appropriate where, for any claim element that is not literally present in an accused device, "the claimed limitation and the accused component 'perform substantially the same function in substantially the same way to achieve substantially the same result.'"  Id. (quoting Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1321 (Fed. Cir. 1998)) (original alteration omitted).  Under either formulation, the equivalence inquiry is a question of fact. Warner-Jenkinson, 520 U.S. at 40.

As noted above, disputes of material fact remain as to whether several elements of claim 1 are absent from the Blue Arc SMU-BlueArc Server combinations.  Specifically, with respect to the accused device comprised of a Silicon Server and its associated SMU, a genuine dispute of fact remains as to whether virus scanning "requests" originate from client computers on the data network.  In addition, the court has identified disputed questions of fact concerning whether at least one of the other categories of requests that plaintiff has cited as a "predefined non-NFS class of requests" is sufficiently general in nature to comprise a "class" of requests, and if so, whether requests within that class are "not satisf[ied]" by the Silicon Server or the Titan.  The record is devoid of any evidence suggesting what features of the accused device might be equivalent to these claim elements.  Indeed, it is unclear whether the concept of "equivalence" is meaningful in determining the presence in the accused devices of at least one of the claim elements at issue, the requirement that the claimed second processing unit "not satisfy[] any requests from said network which are within said predefined non-NFS class of requests."  The Federal Circuit has repeatedly cautioned against applying the doctrine of equivalents to find infringement if doing so would vitiate a claim limitation. See, e.g., Novartis Pharm. Corp. v. Eon Labs Mfg., Inc., 363 F.3d 1306, 1312 (Fed. Cir. 2004); Lockheed Martin Corp. v. Space Sys./Loral, Inc., 324 F.3d 1308, 1321 (Fed. Cir.

UNITED STATES DISTRICT COURT
For the Northern District of California

2003).  In light of this principle, it is difficult to imagine that a jury could reasonably conclude that a server that literally fails to "not satisfy" requests within a particular class of requests is equivalent to the claimed second processing unit.  Simply put, "satisfying" a request cannot be equivalent to "not satisfying" that request.  Similar concerns could also be raised with the aforementioned "predefined class" and "requests from [a data] network" requirements.  In any event, for purposes of the instant motion, it is sufficient to note that these issues at least raise genuine disputes of material fact as to whether the accused SMU-server combinations infringe claim 1 of the '366 Patent under the doctrine of equivalents.  The court therefore denies plaintiff's motion for summary judgment as to those allegations of infringement. Furthermore, for the same reasons, defendant's motion for summary judgment of noninfringement must also be denied.

B.      "Apparatus"

Having held that genuine disputes of material fact preclude entry of summary judgment on the issue of whether the accused SMU-server combinations read on claim 1 of the '366 Patent, the court need only briefly address the parties' remaining dispute concerning the "apparatus" claim term.  As noted above, the sole structurally defined element of claim 1 recites an "[a]pparatus for use with a data network and a mass storage device, comprising the combination of first and second processing units."  While plaintiff claims that the "apparatus" limitation is met as a matter of law by the SMU-server combinations, defendant argues that this determination is properly left to the jury and thus urges the court to deny plaintiff's motion for summary judgment of infringement.

Once again, the court must construe the claim limitation at issue as a matter of law.  In drafting patent claims, "[t]he word 'apparatus' is used generically to denote various machines and devices, including electrical circuits, computer-related apparatuses, hydraulic devices, [or] anything mechanical or electrical having cooperating parts that accomplish some useful result."  Robert C. Faber, Landis on Mechanics of Claim Drafting, § 3.1, at 3-2 (5th ed. 2003); see also NCR Corp. v. Lemelson Med., Educ. & Research Found., No. 99-CV-3017, 2001 WL 1911024, at *5 n.1 (S.D.N.Y. Apr. 2, 2001) (defining "apparatus" as "a set of materials or equipment designed for a particular use") (citation omitted), aff'd, 33 Fed. Appx. 7 (2d Cir. 2002).  This meaning is undoubtedly the sense in which the inventors of the '366 Patent (or more precisely, their patent agent) intend the "apparatus" term to be used in the patent's claims.

Comparing this "generic" meaning of the "apparatus" term with the accused devices, the conclusion that the claim element at issue reads on both of the SMU-server combinations necessarily follows.  Indeed, plaintiff has submitted undisputed evidence that the "cooperating parts" of each of the accused devices—an SMU and a server—are designed to be used in combination with each other in order to provide file server services to clients on a data network.  See, e.g., Kim Decl., Exh. 7 (Garbagnati Dep.) at 101; see also Garbagnati Decl. ¶ 6.  Such a "set of materials or equipment designed for a particular use" is as a matter of law an "apparatus."  Accord NCR, 2001 WL 1911024, at *5 n.1

Defendant attempts to avoid this result by pointing out the physical and functional differences between the accused devices and the preferred embodiment of the claimed invention.  Admittedly, the fact that the two "processing units" of the accused devices are physically separated, have different IP addresses,

23

UNITED STATES DISTRICT COURT
For the Northern District of California

1   employ different passwords, and to some extent perform different functions distinguish the products sold by

2   defendant from the file server disclosed in the specification of the '366 Patent.  However, it hardly bears

3   mentioning that it is the claims of the patent, and not its preferred embodiment, that define the scope of the

4   invention.  Schering Corp. v. Amgen Inc., 222 F.3d 1347, 1353 (Fed. Cir. 2000) (citation omitted) ("The

5   claim language, of course, defines the bounds of claim scope.").  Nor is there any merit in defendant's

6   suggestion that the SMU-server combinations are not "apparati" because both BlueArc Servers are

7   capable of functioning without an SMU.  Simply put, it is no defense to patent infringement that an accused

8   device only embodies the claimed invention when sold or offered for sale in certain configurations.  See Bell

9   Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d 615, 622-23 (Fed. Cir.

10  1995).  Thus, because each of the purportedly genuine factual disputes that defendant has identified are

11  immaterial to determining whether claim 1 reads on the accused devices, the court holds as a matter of law

12  that the accused SMU-server combinations meet the "[a]pparatus . . . comprising the combination of first

13  and second processing units" limitation of claim 1 of the '366 Patent.

14          Nonetheless, for the reasons previously discussed, genuine disputes of material fact remain as to

15  whether these "apparati" meet all of the functionally defined limitations of claim 1.  Furthermore, each of the

16  remaining claims at issue—claim 3 in plaintiff's motion and claims 3 and 4 in the motion filed by

17  defendant—is a dependent claim of claim 1.  This of course precludes entry of summary judgment in favor

18  of plaintiff as to either of the claims that it asserts to be infringed.  Moreover, because defendant does not

19  dispute that the additional elements of claims 3 and 4 read on the accused devices, the court must reach the

20  same conclusion with respect to its motion for summary judgment of noninfringement The court therefore

21  denies the parties' cross-motions for summary judgment on the issue of whether the SMU-server

22  combinations infringe the '366 Patent

23

24

25

26

27

28

<u>CONCLUSION</u>

For the reasons stated above, the court GRANTS plaintiff's motion for summary judgment that defendant has infringed claims 7 through 16 of the '918 Patent and DENIES defendant's motion for summary judgment of noninfringement as to those claims.  The court further DENIES plaintiff's motion for summary judgment of infringement with respect to claims 1 and 3 of the '366 Patent.  In addition, the court DENIES defendant's motion for summary judgment of noninfringement as to claims 1, 3, and 4 of the '366 Patent.

IT IS SO ORDERED.

Date:   May 16, 2005

/s/
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

25

**ENDNOTES**

1.  Plaintiff acquired the patents in suit in June 2003, following Auspex's decision to seek bankruptcy protection and cease operations.

2.  NFS is a standard promulgated by Sun Microsystems that clients and servers use to exchange file data in a Unix environment.  '366 Patent, 2:22-26.  The standard is widely adopted in the Unix community.  Id.

3.  Unless otherwise noted, all citations to "Joint Statement" refer to the Joint Statement of Undisputed Facts submitted in support of the motions for summary judgment of infringement and noninfringement of the '366 Patent.

4.  The various "Silicon Server" models are substantially identical in their architecture, with differences among the models primarily arising from improved speed and performance in the 8000-series models in comparison to the Si7500 server.  Kim Decl., Exh. 7 (Garbagnati Dep.) at 27-28.

5.  In this context, the court uses the term "board" to refer to both the network interface board of the Silicon Server and the Titan Server's network interface module.

6.  Because the parties have presented no evidence that the claim terms "satisfying" and "request" have specialized meanings in the field of network file server architecture, it is proper to rely on nontechnical dictionary definitions to determine the ordinary meaning of those terms.  See Gemstar-TV Guide Int'l, Inc. v. International Trade Comm'n, 383 F.3d 1352, 1366 (Fed. Cir. 2004) (citing Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp., 309 F.3d 1365, 1369 (Fed. Cir. 2002)).

7.  Alternatively, defendant argues that the accused devices cannot infringe claim 1 of the '366 Patent if more than one category of requests constitutes a "predefined non-NFS class of requests."  This argument is contrary to Federal Circuit law.  As the court observed in Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931 (Fed. Cir.), cert. denied, 498 U.S. 920 (1990), "infringement [cannot be] avoided if a claimed feature performs not only as shown in the patent, but also performs an additional function."  Id. at 945 (citing Radio Steel & Mfg. Co. v. MTD Prods., Inc., 731 F.2d 840, 848 (Fed. Cir. 1984)).  Thus, the fact that the accused devices might respond to more than one "predefined non-NFS class of requests" does not preclude a finding of infringement if all claim elements are embodied in those devices.

8.  Plaintiff also identifies SSH requests as a category of requests capable of meeting the "predefined non-NFS class of requests" limitation of the claimed invention.  However, for the reasons set forth in the preceding discussion of "advanced management requests," the "not satisfying requests" element of claim 1 would not read on the Blue Arc Servers if the allegedly infringing "predefined non-NFS class of requests" were defined to include SSH requests.  Thus, SSH requests cannot support a finding that claim 1 is infringed by the accused devices. (One might also infer that the same is true of other remote shell requests such as Telnet requests, although it is not necessary to reach that question at this time.)  In addition, plaintiff's expert identifies "scripting"—i.e., utilities that allow the entry of multiple management commands via a command line interface, or CLI—as an example of a category of advanced management requests not satisfied by the BlueArc Servers.  Faillace Decl., Exh. 4 at 1.4.  However, defendant submits uncontroverted evidence that several scripting utilities are supported on the BlueArc Servers.  Garbagnati Decl. ¶ 26.  Moreover, because "scripting" requests are in fact nothing more than a sequence of CLI requests sent serially to one of the processing units of the accused devices, the record establishes that some subset of scripting requests is satisfied by the servers.  Id. ¶¶ 13, 15, 25.  For these reasons, there is no genuine dispute of fact that the predefined class of "scripting" requests that plaintiff identifies cannot meet every limitation of the "second processing unit" of the claimed invention.

1    9.  The issue of whether a request is "satisfied" by the BlueArc Servers must be distinguished from the

2    additional concern that defendant has raised regarding the fact the servers can be configured to receive and
     respond to many management requests without the involvement of their SMUs.  Garbagnati Decl. ¶¶ 11,

3    19; see also Garbagnati Supp. Decl. ¶¶ 5-9 (discussing the procedures for setting the destination internet
     protocol ("IP") address for system management requests directed at the accused devices); Faillace Supp.

4    Decl. ¶ 8 (same).  That the servers are able to operate independently of an SMU does not by itself relieve
     defendant of liability.  See SunTiger, Inc. v. Scientific Research Funding Group, 189 F.3d 1327, 1336

5    (Fed. Cir. 1999) (citing Bell Communications Research, Inc. v. Vitalink Communications Corp., 55 F.3d
     615, 622-23 (Fed. Cir. 1995)) (observing that "part-time infringement is nonetheless infringement").

6    Nonetheless, the ability to alter the configuration of the servers might be relevant in determining whether a
     particular class of non-NFS requests is "predefined," as it must be to infringe claim 1 of the '366 Patent.

7

8

9

10

11

12

13    UNITED STATES DISTRICT COURT
14    For the Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27